No. 13115

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

In the Matter of:

CHARGES AGAINST ROBERT DeWAR,
Police Officer.

Appeal from: District Court of the Eighth Judicial District,
Honorable LeRoy L. McKinnon, Judge presiding.

Counsel of Record:

For Appellant:

John M. McCarvel argued, Great Falls, Montana

For Respondent:

Larsen and Gliko, Great Falls, Montana
David V. Gliko argued, Great Falls, Montana
Swanberg, Koby, Swanberg & Matteucci, Great Falls,
Montana
A. G. Matteucci argued, Great Falls, Montana

Submitted: November 10, 1975

Decided: APR 6 - 1976

Filed: APR 6 - 1976

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a declaratory judgment by the district court, Cascade County. The judgment directed that the police commission of the city of Great Falls proceed with its hearing of charges against Robert Dewar, a Great Falls city police officer, without requiring the disclosure of the identity of an informant. Officer Dewar appeals from that judgment.

Robert Dewar, a police officer with the city of Great Falls, is charged with the theft of two bicycles from the Great Falls police department storage garage during the month of October 1974. Charges were brought under section 11-1806, R.C.M. 1947, before the police commission of the city of Great Falls and Dewar was suspended from his duties on December 26, 1974.

A hearing commenced before the police commission on February 19, 1975. At the hearing, Sergeant James Cook of the Great Falls police department testified that he first initiated his investigation of Officer Dewar when an unidentified police officer told him that there was rumor Officer Dewar had stolen some bicycles. Subsequently, Sgt. Cook's investigation led him to interview several other police officers, one of whom admitted stealing a bicycle from the police storage garage and implicated Officer Dewar. The names of the interviewed police officers were revealed. During the questioning of Sgt. Cook by defense counsel for Robert Dewar, Cook refused to identify the unnamed police officer who originally related the rumor. The police commission ordered Sgt. Cook to reveal the identity of the informer. A motion was made by the city attorney to continue the hearing to a later date and submission of briefs was ordered by the police commission as to whether the identity of the informer had to be disclosed.

On March 10, 1975, the hearing reconvened. Sgt. Cook

- 2 -

was again ordered by the police commission to respond and disclose the identity of the informant, he refused. Upon motion of the city attorney, the police commission granted a recess to allow the city attorney to secure a determination from the district court as to whether the police commission had the authority to order a witness to answer a question propounded to him.

The city then made application to the district court, Cascade County, for a writ of certiorari or other appropriate writ, on March 19, 1975. The court granted leave to file the affidavit for a writ of certiorari or other appropriate writ and ordered the police commission to show cause why such writ should not issue. The hearing on the order to show cause was set for April 9, 1975, before the Hon. LeRoy L. McKinnon.

Briefs were filed in the district court by the city, Officer Dewar, and an amicus curiae brief on behalf of Sgt. Cook. A motion to quash the order to show cause and to dismiss the application for the writ of certiorari was filed by Officer Dewar. A hearing was held on the order to show cause and the motion to quash. The court took the matter under advisement. On May 21, 1975, the district court deemed "declaratory judgment the more appropriate remedy" and issued findings of fact and conclusions of law, wherein the court concluded:

1. That the only issue properly before the court was that of disclosure or nondisclosure of the identity of an informant or tipster.

2. That under the circumstances of the case, the identity of the informant or tipster was irrelevant and immaterial, and the objection to disclosure should be sustained.

Officer Dewar appeals from the declaratory judgment.

The matters just related appear initially to be deceptively simple but on further examination we have a multitude of legal

problems which go to the very heart and the integrity of the police commission proceedings, as set out in section 11-1801, et. seq., R.C.M. 1947.

First, the initial issue taken to the district court from the commission was never ruled upon but has been raised as an issue on appeal to this Court. The question ruled upon by the district court was not raised as an issue by appellant, but was briefed and argued by the city and amicus curiae.

The issues this Court will consider relate to (1) the power of the police commission to compel a witness to testify; and (2) whether a writ of certiorari or a declaratory judgment properly lies in this proceeding.

The police commission is a creature of statute promulgated by the legislative branch of the government and directed to the administrative branch of government; to be administered by the administrative or executive branch in connection with the operation of municipal police departments. The fact that the police commission performs a so-called quasi-judicial function does not change the character of the body or its proceedings or place it within the judicial branch. Nor is there a review or appeal by or to the judicial branch of government, unless provided by legislative enactment. State ex rel. Holt v. District Court, 103 Mont. 438, 63 P.2d 1026.

The code section of the Metropolitan Police Law which bears on this controversy is section 11-1806, R.C.M. 1947. The pertinent parts of that section read:

> "(1) The police commission shall have the juris-diction, and it shall be its duty to hear, try and decide all charges brought by any person or persons against any member or officer of the police department * * *.
>
> "(2) * * *
>
> "(3) It is the duty of the police commission at

the time set for hearing a charge against a police officer, <u>to forthwith proceed to hear, try and determine the charge according to the rules of evidence applicable to courts of record in the state of Montana.</u> * * *

"(4) The chairman, or acting chairman, of the police commission, shall have power to issue subpoenas, attested in its name, to compel the attendance of witnesses at the hearing and any person duly served with a subpoena is bound to attend in obedience thereto, <u>and the police commission shall have the same authority to enforce obedience to the subpoena, and to punish the disobedience thereof, as is possessed by a judge of the district court in like cases,</u> provided, however, that punishment for disobedience is subject to review by the district court of the proper county.

"(5) * * *

"(6) Such action of the police commission shall, however, be subject to modification or veto by the mayor, made in writing, giving reasons therefor, which shall become a permanent record of the police commission, provided, however, that where and when the police commission decides the charge not proven the decision is not subject to modification or veto by the mayor nor subject to any review but is final and conclusive.

"Where the police commission decides the charge proven, the mayor, within five (5) days from the date of the filing of such findings and decision with the city clerk, may modify or veto such findings and decision.

"(7) When a charge against a member of the police force is found proven by the board, and is not vetoed by the mayor, the mayor must make an order enforcing the decision of the board, or if modified by the mayor, then such decision as modified, and such decision or order shall be subject to review by the district court of the proper county on all questions of fact and all questions of law.

"(8) The district court of the proper county shall have jurisdiction to review all questions of fact and all questions of law in a suit brought by any officer or member of the police force, but no suit to review such hearing or trial or for reinstatement to office shall be maintained unless the same is begun within a period of sixty (60) days after the decision of the police commission or order of the mayor has been filed with the city clerk."
(Emphasis added.)

As noted in subsection (7), section 11-1806, the final

decision of the police commission is subject to review by the

- 5 -

mayor or head of the administrative or executive branch of the municipality. The mayor has been given the authority to veto, amend or affirm the actions of the police commission, unless the police officer is acquitted of the charges brought against him. This seems to be the termination of the review process.

Subsection (8), section 11-1806, provides a remedy for the policeman if he is dissatisfied with the administrative process of review by the mayor. He is authorized to file his separate action in the appropriate district court for a review of the facts and the law.

Subsection (3), section 11-1806, provides the commission shall proceed according to the rules of evidence applicable to courts of record. Subsection (4), provides the authority for the chairman to issue subpoenas, to compel the attendance of witnesses at a hearing and to punish disobedience with the same authority as possessed by a judge of the district court in like cases. However, punishment for disobedience is subject to district court review.

Therefore, we have an independent administrative commission with exclusive jurisdiction to hear and determine charges brought against municipal police officers, which is a quasi-judicial function; State ex rel. Mueller v. District Court, 87 Mont. 108, 285 P. 928. The grant of powers by the legislature to the commission in subsections (3) and (4), section 11-1806, would be meaningless without the corresponding power to compel testimony once a reluctant witness has been brought before the commission; we find this to be the intent of the legislature. The power to compel testimony must also be subject to the same restrictions as those that guide a district court in the trial of like cases.

The holding in Holt and similar cases would indicate

the judiciary generally should be less inclined to inject themselves into administrative proceedings directly by writ or declaration and particularly those in progress, unless there appears to be clear legislative authority to intervene. Intervention in affairs of the executive branch should be carefully considered in any case and much more carefully than those matters solely within the judicial branch.

In State ex rel. Johnston v. District Court, 93 Mont. 439, 444, 19 P.2d 220, this Court set out three requisites to be met in the consideration of an application for a writ of certiorari: (1) Excess of jurisdiction in the court making the order complained of; (2) absence of the right of appeal; and (3) lack of any plain, speedy and adequate remedy other than the writ of certiorari.

There does not appear to be any showing that the commission acted in excess of its jurisdiction in this matter and the district court seems to agree inasmuch as the court avoided the writ and entered its findings and conclusions as a declaratory judgment. We find no reason to burden this opinion with a further discussion of other considerations involved in the granting of a writ of certiorari, except to comment that in any case this procedure is not proper where the proceedings to be reviewed are pending or undetermined. State ex rel. Johnston v. District Court, supra; 14 C.J.S. Certiorari §20a.

The declaratory judgment which was issued in the matter seems to be a product of practicality in an effort to render some kind of guidance to an administrative body boggled in a tempest blown somewhat out of proportion to its overall value to the proceedings then under consideration.

There is no Montana law on this particular situation because it is generally conceded in the law that this is not the office of a declaratory judgment. Declaratory judgment is a remedy

that declares the rights and duties of the parties.

The purpose of declaratory relief is to liquidate un-certainties and controversies which might result in future litigation and to adjudicate rights of parties who have not otherwise been given an opportunity to have those rights deter-mined. However, it is not the true purpose of the declaratory judgment to provide a substitute for other regular actions. 22 Am Jur 2d, Declaratory Judgment §§ 1, 2, 6.

Other jurisdictions have denied the remedy of declara-tory judgment where appeal by statute or otherwise from the actions of administrative bodies exists. Board of County Com-missioners v. Buch, 190 Md. 394, 58 A.2d 672, and cases cited therein.

Similarly in Florida it is well established (City of Miami v. Eldredge, Fla., 126 S.2d 169, 170) that the declaratory judgment statute:

> " * * * is no substitute for an established procedure
> for appeal or review of decisions of judicial
> tribunals, or of boards or administrative officials
> exercising judicial or quasi-judicial powers."

No jurisdictions that could be found considered, much less approved, the declaratory judgment as a vehicle to obtain relief from rulings within the jurisdiction of administrative bodies or commissions in the process of exercising their quasi-judicial functions and/or powers.

The declaratory judgment in this matter was improperly issued and is hereby vacated and of no effect.

The matter of the identity of the original informer who spoke to Sgt. Cook is not squarely before this Court, even though the law on disclosure was presented together with other arguments. The question was not accepted or a decision given by the district court as a matter of law. Rather the district court ruled the matter irrelevant as a matter of fact. The law has been briefed

- 8 -

to the commission and the following statement in Roviaro v. United States, 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L ed 2d 639, cited in State ex rel. Offerdahl v. District Court, 156 Mont. 432, 436, 481 P.2d 338, seems to furnish sufficient guidance in this matter:

> "'We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'"

An examination of the transcript of the proceedings before this Court discloses no facts upon which a proper ruling could be made as to relevance. The short exchange between the city attorney and defense attorney only contains the conclusion of counsel on the one hand that it would be damaging to the department if the identity was revealed. Counsel for Officer Dewar asserted that the answer by Sgt. Cook would determine if any further witnesses would be called by the defense and until the matter was settled the defense could not proceed.

The declaratory judgment of the district court is vacated. The police commission is directed to establish the facts upon which the parties rely to support their respective positions by offer of proof or memorandum, and based on the facts received and ruling case law for guidance proceed with the hearing to its conclusion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 9 -