No. 82-176

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

NORTHWEST LAND AND DEVELOPMENT
OF MONTANA, INC.,

                            Plaintiff and Appellant,

    vs.

STATE TAX APPEAL BOARD, MONTANA DEPARTMENT
OF REVENUE, and MAY JENKINS, TREASURER,
YELLOWSTONE COUNTY,

                            Defendants and Respondents.

---

Appeal from:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone
              Honorable Diane Barz, Judge presiding.

Counsel of Record:

    For Appellant:

        Jones, Jones and Work, Billings, Montana
        Fred E. Work Jr., argued, Billings, Montana

    For Respondents:

        Harold F. Hanser, County Attorney, Billings, Montana
        Larry G. Schuster argued, Dept. of Revenue, Helena,
        Montana

---

                        Submitted:   March 7, 1983

                        Decided:     April 7, 1983

Filed: APR 7 - 1983

_Ethel M. Harrison_

-----------------------------------------
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal comes from the Thirteenth Judicial District in and for the County of Yellowstone; the District Court having upheld a decision by the State Tax Appeal Board, save a minor mathematical adjustment of the Board's ruling.

The appellant is the owner of property located in Billings, Montana. In 1969, the appellant entered into a twenty-two year lease with the S.S. Kresge Company. S.S. Kresge, commonly known as K-Mart, leased the appellant's building and land for an annual rental of $1.80 per square foot. Additionally, the appellant would receive a percentage of yearly gross sales beyond 7.56 million.

In 1980, the appellant's property was appraised at $2,732,920; $1,306,800 representing the land and $1,426,120 representing the improvements. The Department made the assessment based upon the cost approach to property valuation. The Department representative testified that this method was used because it is more stable and provides better equalization of valuation among taxpayers. The focus of this method is on re-placement cost less depreciation. The crux of appellant's argu-ment is that the cost approach to property valuation does not adequately consider the long-term lease, consequently, the appraised value is distorted.

The appellant filed an appeal with the Yellowstone County Tax Appeal Board. The Board denied relief, stating only that the values placed on the land and buildings by the Department of Revenue are fair and just.

The appellant then took his case to the State Tax Appeal Board. A hearing was held on March 18, 1981. The Board upheld the land appraisal at $1,306,800, but reduced the building appraisal to $833,564 from the original appraisal of $1,426,120. The Board found that the income approach to valuation was per-tinent because of the existence of the long-term lease, something

a prudent investor would consider in determining market value.

When appellant's property was leased, the surrounding area was undeveloped. Presently, the Rimrock Mall is near the site and rental rates have increased markedly. The appellant receives substantially lower rent per square foot than adjoining property owners. Appellant's rental is $1.80 per square foot whereas adjoining property owners receive from $6.50 to $30 per square foot. Unfortunately, appellant is locked into the lower rate during the term of the lease, over twenty years. Thus, appellant argues that the property is of lower value than one might expect since investors would not be willing to purchase the property because of its lower rental returns. In view of these circumstances the State Tax Appeal Board readjusted the value of the improvements. They took $1.80 and divided it by $6.50 to get a 28 percent factor; this factor was used to equalize rental income value between appellant's property and comparable properties. Then, the original appraisal of the improvements derived from the cost approach, $1,426,120, was multiplied by .28 to get $399,314. To this product was added the capitalized value of the lease override, since sums would be received as rental when gross sales exceed 7.56 million. The Board's re-evaluation yielded the improvements value at $833,564.

The appellant then sought further reduction in the District Court, however, the Court affirmed the decision of the State Tax Appeal Board with a provision that a minor mathematical error be corrected. In computing the value of the improvements the Board used a 28 percent factor when it should have used a 27.69 percent factor. In effect, the District Court's calculations were mathematically precise. Apparently, the State Board rounded the factor to a whole number. This adjustment changed the base value of the improvements to $394,892, from the Board's figure of $399,314.

On appeal to this Court the appellant claims that: (1) the decision below was clearly erroneous in view of the evidence; (2)

that the valuation methods chosen by the State Tax Appeal Board and affirmed by the District Court were arbitrary and capricious or characterized by an abuse of discretion or unwarranted exercise of discretion; and (3) that the decision below does not take into consideration the fair market value of the property. We find no merit in any of the appellant's contentions and we accordingly uphold the District Court's judgment.

In relation to the first issue, appellant cites the six-part test to be used in determining whether or not a taxpayer has carried his burden when he claims his property was assessed inequitably. In such a situation:

> "'[I]t is essential that the taxpayer prove (1) that there are several other properties within a reasonable area similar and comparable to his; (2) the amount of the assessments on these properties; (3) the actual value of the comparable properties; (4) the actual value of his property; (5) the assessment complained of; (6) that by a comparison his property is assessed at a higher proportion of its actual value than the ratio existing between the assessed and actual valuations of the similar and comparable properties, thus creating discriminations.'" Department of Revenue v. State Tax Appeal Board (1980), ___ Mont. ___, ___, 613 P.2d 691, 694-695, 37 St.Rep. 1063, 1066-67; (quoting Maxwell v. Shivers (1965), 257 Iowa 575, 133 N.W.2d 709, 711).

Upon thorough review of the record it is obvious that the appellant did not meet its burden. The test is meant to require at least comparative valuation and assessment information; something that the appellant failed to show. The most that appellant showed was that comparable properties were also assessed by using the cost approach to valuation. This tends to show equality among taxpayers, not inequality. The District Court was correct in upholding the decision of the State Board.

Next, appellant challenges the choice of valuation methods used by the State Tax Appeal Board and affirmed by the District Court. Specifically, appellant challenges the use of $6.50 as a comparative rental rate used to find the 28 percent factor. Appellant contends that the figure of $7.50 should have been used, the square foot rental charge of the Rimrock Mini-Mall;

which appellant claims is more comparable to the K-Mart property. Appellant also disputes the method used to determine the percentage lease override. The State Board used the mortgage equity approach. Appellant argues that other methods could have been used. In appellant's view, the choice of these methods was arbitrary and capricious or characterized by an abuse or unwarranted exercise of discretion.

We find sufficient evidence in the record to justify the Board's choice of $6.50 as a comparative rental figure. We agree with the District Court when it said: "[i]t is within the Board's province as fact-finder to give certain evidence more weight than other evidence. The Board's choice of the lower amount was within its power and since there is evidence in the record to support such finding it must stand." Concerning the use of the mortgage equity approach; appellant has not shown how it is unacceptable or arbitrary, rather he has shown only that it is not advantageous when applied to him.

It is not a judicial function to act as an authority on taxation matters. We will not evaluate the advantages and disadvantages of a particular assessment method as applied to a taxpayer. "Tax appeal boards are particularly suited for settling disputes over the appropriate valuation of a given piece of property or a particular improvement, and the judiciary cannot properly interfere with that function." Larson v. Department of Revenue (1975), 166 Mont. 449, 457, 534 P.2d 854, 858; (citing Blair v. Potter (1957), 132 Mont. 176, 315 P.2d 177). Assessment formulations are within the expertise of the State Tax Appeal Board and we will not overturn their decisions unless there is a clear showing of an abuse of discretion. Additionally, we note that the State Board's finding of fact number VI enumerated five different methods of valuation; certainly an indication that those chosen were not done so arbitrarily.

Finally, appellant argues that the State Tax Appeal Board's decision does not take into consideration the fair market value

of the property. This issue strikes us as being frivolous. Indeed, the entire purpose of assessment is to establish a fair market value. The standard is clear: "[a]ll taxable property must be assessed at 100% of its market value . . ." Section 15-8-111(1), MCA. "Market value is the value at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Section 15-8-111(2)(a), MCA. The Board was clearly cognizant of the market value standard. In its findings of fact the Board stated: "[i]t is Montana law that property should be taxed at its market value."

Appellant relies heavily on statements made by its witnesses to the effect that a buyer would not purchase the property at its assessed value. In other words, appellant claims that the assessed value exceeds the market value. The term market value is elusive, especially when considering the sort of property involved in this case. What this Court said many years ago still applies today: "[t]he value of property is a matter of opinion, . . . Courts cannot be called upon, in every instance, to settle differences of opinion in this regard between the assessing officer and the property owner. Otherwise, courts would be converted into assessing boards . . ." Danforth v. Livingston (1900), 23 Mont. 558, 563, 59 P. 916, 917; see also, State ex rel. Snidow v. Board of Equalization (1932), 93 Mont. 19, 45, 17 P.2d 68, 76. Absent a clear showing of an abuse of discretion, the Board's decision must stand.

Based upon the foregoing, we affirm the judgment of the District Court.

John Conway Harrison
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices